SCF CONSULTING, LLC, Appellant

v.

BARRACK, RODOS & BACINE, Appellee

No. 7 EAP 2017

Supreme Court of Pennsylvania.

Argued: September 12, 2017

Decided: December 19, 2017

G. Alexander Bochetto, Esq., Gavin P. Lentz, Esq., Bochetto and Lentz, P.C., Peter Rowland Bryant, Esq., for SCF Consulting, LLC, Appellant.

Raymond Adam Quaglia, Esq., Ballard Spahr Andrews & Ingersoll, L.L.P., Matthew Ian Vahey, Esq., Ballard Spahr LLP, for Barrack, Rodos & Bacine, Appellee.

Sara A. Austin, Esq., Josh J. T. Byrne, Esq., Swartz Campbell, L.L.C., Amy Joann Coco, Esq., Weinheimer Haber & Coco, P.C., James C. Sargent, Esq., Thomas G. Wilkinson Jr., Esq., Cozen O'Connor, for Amicus Curiae Pennsylvania Bar Association, 100 South Street Harrisburg, PA 17101, Appellee.

Chief Justice Saylor delivers an opinion announcing the judgment of the Court, joined by Justice Dougherty. The result of reversal of the Superior Court's order is also supported by Justices Baer and Todd.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

### CHIEF JUSTICE SAYLOR

This appeal concerns the enforceability of an asserted fee-splitting agreement between a law firm and a lay entity.

Appellant SCF Consulting, LLC lodged a civil complaint against Appellee, the law firm of Barrack, Rodos & Bacine, in the common pleas court. Appellant averred that it had maintained a longstanding oral consulting agreement with the law firm, which the firm purportedly breached in 2014. According to Appellant, the arrangement was for the solicitation of institutional investors to participate in securities class actions, and remuneration was to be in the form of a two-and-one-half to five-percent share of the firm's annual profits on matters "originated" by Appellant's principal or on which he provided substan-

tial work. Complaint in *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, No. 1613 Feb. Term 2015 (C.P. Phila.), at ¶ 10. Among the various counts of the complaint, Appellant advanced causes of action for breach of contract and unjust enrichment.

Appellee interposed preliminary objections denying the existence of a fee-sharing agreement and highlighting that any such arrangement would be in violation of Rule 5.4 of the Rules of Professional Conduct. *See* Pa.R.P.C. 5.4(a) (prescribing, subject to enumerated exceptions, that "[a] lawyer or law firm shall not share legal fees with a non-lawyer"). Referencing *Wishnefsky v. Riley & Fanelli, P.C.*, 799 A.2d 827 (Pa. Super. 2002), among other cases, Appellee took the position that the court should refuse, on public policy grounds, to permit a cause of action to proceed based on an alleged, impermissible contract.

In reply, Appellant claimed that the asserted consulting agreement qualified as an express exception to the anti-fee-splitting rule for an employee "compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement." Pa.R.P.C. 5.4(a)(3). Alternatively, Appellant posited that Appellee's attempt to invoke public policy as a shield was an "audacious defense" which, if credited, would perversely reward the law firm by allowing it to profit from its own unethical conduct. *See* Plaintiff's Memorandum of Law in Response and Opposition to Preliminary Objections in *SCF Consulting*, No. 1613 Feb. Term 2015, at 1, 16. In this regard, Appellant referenced *Grigsby v. Major*, 28 Phila. Rptr. 572, 576 (C.P. Phila. Oct. 4, 1994) (refusing to invalidate a fee-sharing agreement between attorneys on the basis that it violated the Rules of Professional Conduct, where to do so would result in a windfall).

The county court agreed with Appellee's position concerning both the non-applicability of the exception to Rule 5.4(a)'s prohibition and the unenforceability of the alleged agreement. *See SCF Consulting*, No. 1613 Feb. Term 2015, *slip op.* at 2 (C.P. Phila. Apr. 24, 2015) ("A court cannot enforce an agreement by a law firm to share fees with a non-lawyer because it violates public policy as embodied in the ... Rules of Professional Conduct." (citing *Wishnefsky*, 799 A.2d at 830)). On appeal, the Superior Court affirmed but limited its treatment to the determination that the Rule 5.4(a) prohibition against fee-splitting applied on its terms and there was no applicable exception. *See SCF Consulting, LLC v. Barrack, Rodos & Bacine*, No. 1413 EDA 2015, *slip op.* at 10–11 (Pa. Super. Jul. 8, 2016). Given this resolution, it was the court's position that there was no need to address the broader public policy arguments. *See id.* at 6 n.3.[1] In a footnote, however, the intermediate court observed that an argument similar to Appellant's had been rejected in *Wishnefsky*. *See id.* The court also declined to address the potential for recovery under a theory of unjust enrichment, since Appellant did

---

1. The Superior Court plainly erred in this regard, since the common pleas court had dismissed the complaint by crediting Appellee's position that public policy served to invalidate the alleged consulting agreement. That this sort of arrangement would violate the law firm's ethical obligations could not serve to defeat Appellant's complaint absent the contested linkage between such violation and the agreement's enforceability as a matter of substantive law. Nevertheless, the intermediate court premised the rejection of an alternative argument that "assum[ed] *arguendo* that the [alleged consulting agreement] was in violation of R.P.C. 5.4," on the bare conclusion that the agreement violated Rule 5.4. *SCF Consulting*, No. 1413 EDA 2015, *slip op.* at 6.

not pursue that theory in its appellate brief. *See id.* at 7 n.4.

We allowed appeal to consider whether, or under what circumstances, the professional conduct rules may be invoked as a defense by a law firm breaching its own ethical obligations by entering into an impermissible fee-splitting arrangement.[2]

Other jurisdictions are divided concerning the appropriate judicial response in this and similar scenarios involving contracts in violation of lawyers' ethical responsibilities, and the parties' arguments track the disparate positions. On the one hand, a majority of jurisdictions follow the approach of the Supreme Court of Illinois, cited in *Wishnefsky*, which generally refuses to enforce agreements that violate professional conduct rules. *See O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill.2d 333, 130 Ill.Dec. 401, 537 N.E.2d 730, 737–38 (1989) ("By refusing in every case to assist the lay party, courts may deter laypersons as well as attorneys from attempting such agreements. We believe that, in this way, the public will be protected more effectively from the potential harms posed by fee-sharing arrangements."). On the other hand, a minority of courts decline to accord substantive effect to such rules, at least where to do so would result in a windfall to offending attorneys. *See, e.g., Marin v. Constitution Realty, LLC*, 28 N.Y.3d 666, 71 N.E.3d 530, 533 (2017) ("[I]t ill becomes defendants, who are also bound by the Code of Professional Responsibility, to seek to avoid on 'ethical' grounds the obligations of an agreement to which they freely assented and from which they reaped the benefits." (quoting *Benjamin v. Koeppel*, 85 N.Y.2d 549, 626 N.Y.S.2d 982, 650 N.E.2d 829, 832–33

(1995)). *See generally* Chunlin Leonhard, *Illegal Agreements and the Lesser Evil Principle*, 64 Cath. U.L. Rev. 833, 866 (2015) (advocating that courts should recognize the mixed policy implications of applying a *per se* rule of invalidity for contracts that violate public policy).

The Pennsylvania Bar Association filed an *amicus* brief crystallizing the quandary in this area of the law, as follows:

> The PBA notes that it is clearly this Court's prerogative to declare, as have the courts in a majority of jurisdictions, that the paramount objective of protecting clients is a matter of public policy, and that this policy will be advanced by declaring all fee sharing agreements that are inconsistent with Rule 5.4 to be void as a matter of law....

> On the other hand, the PBA recognizes that a lawyer should not be permitted to intentionally take advantage of an innocent nonlawyer, by entering into an agreement violating Rule 5.4, and then raising that violation as a defense to a claim for the agreed upon compensation.... It is unreasonable for our courts to be placed in a circumstance where they may be perceived as aiding in attorney misconduct.

Brief for *Amicus* Pa. Bar Ass'n at 13–14. As a middle ground, the PBA suggests that perhaps the Court might wish to consider implementing a *per se* rule that contracts in violation of Rule 5.4 are void as against public policy, but to also temper this approach by permitting quasi-contractual remedies, recovery under the theory of unjust enrichment, or a disgorgement practice implemented through the Disciplinary Board. *See id.* at 14–15.

---

**2.** Again, Appellee denies having been a party to any such agreement. At the preliminary objections stage, however, the allegations of the complaint are taken as true. *See, e.g., Bilt–*

*Rite Contractors, Inc. v. The Architectural Studio*, 581 Pa. 454, 457, 866 A.2d 270, 272 (2005).

In *In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215 (1984), this Court explained that the standards of professional conduct for lawyers do not have the force of substantive law and pronounced that it was not inclined to "allow our trial courts themselves to use the Canons to alter substantive law[.]" *Id.* at 535, 543, 482 A.2d at 217, 221; *accord* Pa.R.P.C., Preamble and Scope ¶ 19 ("[N]othing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra disciplinary consequences of violating such a duty."). We recognize that the circumstances before the Court in *Pedrick* were materially distinguishable from those presented in this appeal. We are aligned, nonetheless, with the broader policy judgment made by our predecessors, at least to the degree that the conduct rules should not be interposed into substantive law when non-regulated parties bear no (or substantially lesser) responsibility relative to the material ethical violations. *Accord Peyton v. Margiotti*, 398 Pa. 86, 92, 156 A.2d 865, 868 (1959) ("When the parties to a contract against public policy or otherwise illegal are not in pari delicto, or equally guilty, and when public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue, relief may be granted." (quoting 8 P.L.E. § 109)). As noted, this approach comports with that of several other jurisdictions, *see, e.g., Atkins v. Tinning*, 865 S.W.2d 533, 537 (Tex. Ct. App. 1993), and we view it as a variant of the lesser-evil principle advocated by some commenta-

tors. *See* Leonhard, *Illegal Agreements and the Lesser Evil Principle*, 64 CATH. U.L. REV. at 866.[3]

The ultimate outcome of this case may turn on factual findings concerning Appellant's culpability, or the degree thereof, relative to the alleged ethical violation. We would hold only that the contract cause of action is not *per se* barred by the purported infraction on Appellee's part and, accordingly, the county court's bright-line approach to the unenforceability of the alleged consulting agreement should not be sustained.[4]

The above expression represents the view of only two Justices. A majority of the Court, however, agrees that the present contract action should not have been dismissed. *See* Concurring and Dissenting Opinion at 280 (Baer, J., joined by Todd, J.). Accordingly, the dismissal will be overturned, and the common pleas court will be in a position of making its own judgment as to the relevance of any wrongful conduct on Appellant's part, without present guidance from this Court.

The order of the Superior Court is reversed, and the matter is remanded, through the intermediate court, to the common pleas court for further proceedings.

Justice Dougherty joins the opinion and files a concurring opinion.

Justice Baer files a concurring and dissenting opinion in which Justice Todd joins.

---

**3.** Certainly, reasonable minds can, and do, differ concerning the appropriate policy stance, and we are respectful of the courts that believe that the greatest good may be achieved through a *per se* approach, on the theory that this most effectively protects clients at large by discouraging improper agreements.

**4.** As to the alternative remedies discussed by the PBA, we deem it advisable to permit one of the main equitable considerations (relative to a non-lawyer's culpability) to be assessed in connection with the threshold determination of whether a contract in violation of professional conduct rules should be declared by the judiciary to be unenforceable as against public policy.

Justice Wecht files a dissenting opinion in which Justice Donohue joins.

Justice Mundy did not participate in the consideration or decision of the case.

## CONCURRING OPINION

### JUSTICE DOUGHERTY

I join the Opinion Announcing the Judgment of the Court ("OAJC") in full, and agree that fee-splitting agreements between attorneys and non-attorneys should not be held to be automatically unenforceable. *See* OAJC, op. at 277. I write separately to articulate an additional danger of a bright-line *per se* rule. As noted by Justice Wecht in his dissenting opinion, holding fee-splitting agreements between attorneys and non-attorneys are always unenforceable may not discourage attorneys from entering into such unenforceable agreements. Dissenting Opinion at 281. In fact, it is my view that a *per se* rule might have the effect of emboldening unscrupulous attorneys—who are often in a superior negotiating posture as compared with their non-attorney contracting counterparts—to enter into illusory fee-splitting agreements with full knowledge the agreement may never be enforced. *See, e.g., Geisinger Clinic v. Di Cuccio*, 414 Pa.Super. 85, 606 A.2d 509, 512 (Pa. Super. 1992) ("If the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable. The promisor has committed him/herself to nothing.") (internal citations omitted). Under such circumstances, the non-attorney who has performed under the contract, seeks payment and is rebuffed, will be left without a remedy at law for the breach. Even if equitable remedies are available, their outcome is far less certain and potentially more limited than an action for breach of contract. *See, e.g., D.A. Hill Co. v. Clevetrust Realty Investors*, 524 Pa. 425, 573 A.2d 1005, 1009 (1990) (to recover under equitable theory of unjust enrichment, party seeking recovery must demonstrate other party received and retained benefit without providing compensation); *Meehan v. Cheltenham Twp.*, 410 Pa. 446, 189 A.2d 593, 595 (1963) (to recover under equitable remedy of unjust enrichment, party seeking restitution must demonstrate: "(1) an enrichment, and (2) an injustice resulting if recovery for the enrichment is denied."); *see also Burgettstown–Smith Twp. Joint Sewage Auth. v. Langeloth Townsite Co.*, 403 Pa.Super. 84, 588 A.2d 43, 45 (1991) ("The most significant requirement for recovery is that the enrichment is unjust. We must focus not on the intention of the parties but on the extent [to which] the enrichment is unjust.") (internal citations omitted).

In my view, allowing a case-by-case determination of the validity of a given fee-splitting agreement via a breach of contract action will not undermine or conflict with any additional potential consequences an attorney may face in disciplinary proceedings for running afoul of the Rules of Professional Conduct.

## CONCURRING AND DISSENTING OPINION

### JUSTICE BAER

This appeal presents the issue of whether a law firm that enters into an unethical fee-sharing agreement with a non-lawyer consulting firm may invoke the law firm's own ethical malfeasance as a defense in a subsequent contract action to enforce the agreement.[1] The Opinion Announcing the

---

1. The law firm herein denies having entered into a fee-sharing agreement with the non-lawyer. However, the complaint against the law firm alleges that such an agreement ex-

Judgment of the Court ("OAJC") holds that while the unethical nature of the fee agreement does not render the contract *per se* unenforceable as a violation of public policy, the fee agreement may, nonetheless, be unenforceable if the non-lawyer bears responsibility relative to the material ethical violation. *See* OAJC at 277 (holding that "the contract cause of action is not *per se* barred by the purported infraction on [the law firm's] part," but observing that "[t]he ultimate outcome of this case may turn on factual findings concerning [the non-lawyer's] culpability, or the degree thereof, relative to the alleged ethical violation").

I agree with the OAJC insofar as it holds that a fee-sharing agreement between a lawyer and a non-lawyer in violation of Rule of Professional Conduct ("RPC") 5.4(a) is not *per se* unenforceable as a violation of public policy.[2, 3] However, because a non-lawyer is not bound by the Rules of Professional Conduct, the non-lawyer committed no unethical or illegal act by entering into the agreement and, thus, can bear no measure of responsibility relative to the law firm's material violation of the rules governing the profession. Accordingly, I would go farther than the OAJC and would hold that the fee-sharing agreement at issue does not violate public policy. To ensure compliance with the professional conduct rules prohibiting the type of fee-sharing agreement at issue, I would refer the law firm or responsible attorney to the Disciplinary Board for prosecution

of purported ethical violations and imposition of disciplinary sanctions.

I reach this conclusion in consideration of well-settled law establishing that the Rules of Professional Conduct cannot serve as the basis to alter substantive law by invalidating an otherwise enforceable agreement. *See In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215, 217 (1984) (holding that an attorney's misconduct in unethically designating himself as a beneficiary in a will could not be used to alter substantive law by invalidating the will); *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 415 (1999) (holding that the rules that govern the ethical obligations of the legal profession do not constitute substantive law); *Donald J. Weiss & Assoc. v. Tulloch*, 961 A.2d 862, 863 (Pa. Super. 2008) (holding that the Rules of Professional Conduct cannot be used as a substantive basis to render illegal and unenforceable a mortgage that violates RPC 1.8's prohibition against conflicts of interest).

The Rules of Professional Conduct themselves suggest their inability to modify substantive law. The preamble to the rules provides that rule violations "should not give rise to a cause of action against a lawyer" and "are not designed to be a basis for civil liability." Pa.R.P.C., Preamble, at ¶ 19. Germane to the instant case, the preamble further states that "the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *Id.* A similar subver-

---

ists, and because this case is at the preliminary objections stage, the allegations in the complaint are taken as true. *See* OAJC at 276 n.2.

**2.** Pa.R.P.C. 5.4 (a) provides that, subject to enumerated exceptions, "[a] lawyer or law firm shall not share legal fees with a non-lawyer."

**3.** In so holding, the OAJC appears to have rejected, properly in my view, the Superior Court's decision in *Wishnefsky v. Riley & Fanelli, P.C.*, 799 A.2d 827 (Pa. Super. 2002) (holding that unethical fee sharing agreements between a lawyer and non-lawyer are unenforceable as violative of public policy, irrespective of the non-lawyer's knowledge or ignorance of the unethical nature of the agreement).

sion of the professional conduct rules arises herein when the law firm invokes its unethical conduct as a shield to immunize itself from a contractual duty.

To avoid such distortion of the professional conduct rules, I would hold that the public policy of this Commonwealth requires that lawyers and law firms be estopped from invoking their own ethical violations as a defense to payment under fee-sharing contracts entered into in violation of RPC 5.4. *See, e.g., Ballow, Brasted, O'Brien & Rusin P.C. v. Logan*, 435 F.3d 235, 242–43 (2d Cir. 2006) (holding that an attorney may not use the ethical rules governing the practice of law to avoid his obligations under an agreement to which he freely consented and reaped the benefits); *Potter v. Peirce*, 688 A.2d 894, 897 (Del. Supr. 1997) (holding that, as a matter of public policy, a lawyer may not be rewarded for violating a rule of conduct by using it to avoid a contractual obligation because, to hold otherwise, would encourage non-compliance with the rule and would create incentives for malfeasance); *see also Shimrak v. Garcia–Mendoza*, 112 Nev. 246, 912 P.2d 822, 826 (1996) (holding that it would be unfair to adopt a double standard and allow attorneys to receive free services simply by claiming that the other party to the contract was *in pari delicto* with them when the other party was a layperson not bound by the professional conduct rules).

In my view, this Court can both avoid the perils arising from unethical fee-sharing contracts and preserve contractual agreements so as to ensure that the parties obtain the fair and reasonable compensation to which they are entitled by enforcing such fee-sharing contracts, but sanctioning, swiftly and harshly, attorneys who violate the disciplinary rules in this regard.

Accordingly, I would reverse the Superior Court's judgment, which affirmed the trial court's order sustaining the law firm's preliminary objections, and remand the case to the trial court for further proceedings.

Justice Todd joins this concurring and dissenting opinion.

## DISSENTING OPINION

### JUSTICE WECHT

Our Rules of Professional Conduct aim to protect the clients that lawyers represent. Relevant to this case, this policy is vindicated by Rule 5.4, which generally invalidates fee-splitting between lawyers and non-lawyers. The difficulty presented is that lawyers might invoke or deploy this rule as a shield or escape hatch so as to take advantage of non-lawyers who have helped generate fees but who are unfamiliar with the Rule barring lawyers from sharing those fees. This case provides our Court the burden and the opportunity to confront and, perhaps, ameliorate this dilemma.

In a thoughtful effort at resolution, the Opinion Announcing the Judgment of the Court ("OAJC") states that the contract action may proceed provided that the court first explores the parties' relative culpabilities with regard to any ethical violation. I would eschew such a discretionary approach, which seems likely to promote or at least allow idiosyncratic, inconsistent, and unduly subjective outcomes. Instead, I would adopt a bright-line rule barring such fee-splitting agreements as unenforceable at law, but allowing non-lawyers to seek judicial relief in equity.[1] Thus, I respectfully dissent.

1. In substance, I understand this to be the

approach endorsed by *amicus curiae* the

The law of contracts long has recognized that an agreement which contradicts public policy is unenforceable. Because our Constitution vests in this Court the authority and responsibility to supervise the practice of law in this Commonwealth, Pa. Const. art. 5, § 10, it falls to us to develop and implement policy regarding lawyers' ethical obligations. By reference to our Rules of Professional Conduct, I would feel bound to apply this Court's expression of policy and would deem the contract at issue unenforceable under the age-old rubric.

As Rule 5.4 clearly states, fee-splitting between a lawyer and non-lawyer is impermissible. This rule protects clients, placing their interests at the forefront. As well, the rule prevents a lawyer from being influenced by a non-lawyer who has a financial interest in the outcome of a case. *See ODC v. Jackson*, 536 Pa. 26, 637 A.2d 615, 620 (Pa. 1994). In a policy decision of the judicial branch operating within its constitutional sphere of authority, this Court afforded primacy to the interests of lawyers' clients. Relaxation of that rule should not be countenanced. I would join the majority of jurisdictions that have held fee-splitting contracts unenforceable. *See* OAJC at 276.

This approach may leave a blameless non-lawyer unable to recover at law notwithstanding that the non-lawyer has performed pursuant to an agreement. This is particularly troublesome in view of the potential for scenarios in which lawyers with superior bargaining power could engage in sharp practice to whipsaw non-lawyers unaware of Rule 5.4 or its consequences. Equity affords an avenue for redress. In

such situations, I discern no impediment to an injured non-lawyer pursuing equitable relief. On appropriate occasions, Pennsylvania courts have recognized that relief in equity may be available even when relief under a contract is unavailable or when a contract is against public policy, particularly when the parties bear unequal blame for entry into the void contract. *See generally Shafer Elec. & Const. v. Mantia*, 626 Pa. 258, 96 A.3d 989, 996 (2014) (holding that equitable relief was available when a contract was unenforceable); *Daley–Sand v. W. Am. Ins. Co.*, 387 Pa.Super. 630, 564 A.2d 965, 971 (1989) (upholding an equitable remedy when enforcing a contract would violate public policy).

To prevail in equity (as distinct from a claim at law in tort or contract), the non-lawyer would have to demonstrate all of the predicates of an equity claim, such as unjust enrichment, unclean hands, or other elements, and would have to show that he or she entered into the agreement with clean hands. *See In re Estate of Pedrick*, 505 Pa. 530, 482 A.2d 215, 222 (1984). In my view, this time-honored standard best accommodates the OAJC's recognition that the parties' relative levels of responsibility should be considered. *See* OAJC at 276–77.

Even so, it might fairly be argued that this approach still does too little to discourage attorneys from entering into fee-splitting contracts with non-lawyers. Our trial courts have an important role to play here. Courts that encounter such fee-splitting agreements, whether in enforcement pleadings or equity actions, should report the attorneys involved to the Office of Disciplinary Counsel for investigation. Further, in principle, I see no impediment

Pennsylvania Bar Association. Brief of Pennsylvania Bar Association at 14–15. I would

endorse it as well.

that would bar the Disciplinary Board itself from requiring disgorgement of fees when appropriate. *See* Pa.R.D.E. 204(b) (providing that conditions may be attached to certain types of discipline).

In this case, the Superior Court stated rather opaquely that SCF "does not raise any issue regarding [its] unjust enrichment claim...." *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, 1413 EDA 2015, slip op. at 7 n.4 (Pa. Super. July 8, 2016). This statement appeared in a footnote inserted after the Superior Court's list of SCF's issues on appeal, a listing that includes challenges to the trial court's dismissal of all counts of SCF's complaint. In its brief to the Superior Court, SCF did address (if briefly) remedies in equity. *See* Superior Court Brief for SCF at 27, 29–30. The Superior Court's footnoted comment might suggest that that court believed that SCF had waived any challenge ("any issue") to the dismissal of its unjust enrichment count. I find the Superior Court's language unclear, or at least insufficiently clear. I would remand to the Superior Court for a specific determination as to whether SCF has preserved its entitlement to seek equitable relief, a species of relief I would allow in these contexts as a general matter.

Justice Donohue joins this dissenting opinion.